Please all rise. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now open. The Honorable Robert B. McLaren is idle. Please be seated. You may call the case. Yes, sir. Your Honor, the first case on the docket this morning is 2-24-0631. The people of the state of Illinois, Plaintiff, Appellee v. Adam C. Morris, Defendant, Appellant. Arguing on behalf of the Appellant, Mr. Jonathan Yeaston. Arguing on behalf of the Appellee, Mr. Miles K. Clark. Mr. Yeaston, you may proceed, please. Good morning, Your Honors. Good morning. You may please the Court. Jonathan Yeaston of the Office of the State Appellate Defender, on behalf of my client, Mr. Adam Morris. Your Honors, the prosecution's key witness in this case bragged about how he was the actual shooter. Yet the jury heard none of this. I'm asking this Court to order an evidentiary hearing to find out why not. Now, we're here on the appeal of the dismissal of a post-conviction petition after the second stage of proceedings. There's two issues raised in the appeal, and later during this argument, I'd like to reach that second issue regarding post-conviction counsel's unreasonable performance. But I think the focus today is on the first issue of the brief, which is why my client's claim of ineffective assistance of trial counsel should be advanced to a third stage evidentiary hearing. As background, Your Honors, in this burglary murder, the state presented two cooperating witnesses, Charles Campo and Jared Fox, who testified in exchange for generous plea bargains. And they also presented various circumstantial evidence, porting to link my client to the movement of guns after the offense and having some role in the planning. The prosecution, though, proceeded through trial on an all-or-nothing theory that my client was the shooter. That was the only theory that was placed before the jury and was the basis of the conviction. Now, it comes to my client's attention later on that one of the state's cooperators, Charles Campo, had actually admitted about a year after the shooting to being himself the shooter. And his jury never heard the case. Let me ask you a question. At what point did that come to the attention of the attorney down below? We don't know, Your Honor. The reason we don't know is we do know that counsel was aware of the conversation with Charles Freeman and that Charles Freeman, in that conversation, had tried to solicit Charles Freeman to go after one of the state's witnesses. We know that. Could he not have raised it in a motion for JNOV or a motion for a new trial? Those are exactly the kind of questions I'd be asking counsel if this reached a third-stage evidentiary hearing. Of course, in this kind of posture, we have no obligation to be able to have an affidavit from counsel who's adverse. I want to know, did counsel see the specific sheet of paper? Did he see these detective notes? It's possible, I think it's likely, given what counsel does at trial, that counsel read these detective notes and maybe just missed that key sentence where Campo says that things went bad, where Freeman says that things went bad and Campo shot him. Go ahead. Well, I saw in the record a report from Officer Michelle Asplund that it seemed to me that I didn't see arguments that, oh, he didn't have that, he didn't have that, that wasn't given. It seems like that was part of the discovery materials. Indisputably, maybe I'm wrong about that and I don't want to ask, but they're more or less on all fours with everything Brock says. So if Asplund's records were submitted, then what harm, if any, is that Brock's allegedly were not? Well, Your Honor, here's my response. There's been a few different claims here. And I think if this makes any hearing, the State is likely to file an answer and the likely finding was that these handwritten notes were disclosed. That's why this is primarily an ineffective assistance of counsel claim. But let's assume they weren't. It's really kind of a technical question and if I should know this from a close examination of the record and I don't, then I apologize for it. But just the same, I wanted to ask it. Were Asplund's records, or excuse me, report from her jail conversation with Mr. Freeman, were those part of the discovery, yes or no? Or some other option? We need a hearing to find out. The State takes position they were and I think that's most likely. But I don't see in your brief you arguing, and that's why I guess I'm confused. Your briefs were all about Brock, Brock, Brock, Brock's handwritten notes. That's what's attached to the pro se post-conviction petition. There's, honestly, if there's discussion of Asplund's, Officer Asplund's reports, and there are a couple. But again, they're on all fours with what Brock says. So help me understand, why do Brock's records make a difference if Asplund's were there? And if Asplund's weren't there, why isn't that discussed? My argument, I do not, if I am placing the, I'm not sure if the Asplund's summary of the notes in the report actually makes it into the record. That is, to be honest, I'm not sure of that. And here's how that would spin out. And I think this comes to a hearing is what counsel is looking at when he calls Freeman to the stand. Just to back up a moment, I would say that under any of these, whichever report is in the record or not, we have this problem that counsel is making an unreasonable decision not to cross Campo and to bring out Freeman to get Campo's confession into evidence. Now, exactly what counsel's thinking was, what those actual reasons were, is exactly what we need a third stage hearing to determine. Now, if we make the conclusion that, if I understand Your Honor's question, is are you looking at trial counsel's reasoning based on what Asplund's report would have been or are you going towards something else? I'm just not sure what the distinction between the two reports would matter. So either way, according to your thinking, if they were in there, trial counsel was ineffective, palliative counsel was ineffective, and therefore it's an issue that is valid to raise at a post-conviction hearing. It is. I think the clear claim here is a direct trial counsel claim, partly because we don't know what counsel was thinking in that cross of Freeman. He's doing some odd things. He's trying to do statement of party opponent based on Campo, even though it's either non-hearsay or he should have laid the foundation, these kind of basic evidentiary errors. And because we don't know what counsel was thinking, cases like Legonovich say this should probably be best raised directly on post-conviction as an ineffective assistance of trial counsel claim. Now, sometimes, we saw this recently in the barricades for the Illinois Supreme Court, a claim of ineffective assistance of appellate counsel should go along. It's possible that, you know, my predecessor and I both missed that there's somewhere in this record that Campo's admission to the offense comes out and that it should have been raised on direct appeal. That is possible. And the remedy for that would be to continue hearing with both the ineffective assistance of trial counsel and appellate counsel claims, which is what the petitions all the way through ask and which is what we ask for in the alternative in the brief. Okay. I better understand. Thank you. And I'm sure you're going to get there, but I'm just wondering then about the accountability theory. I mean, the statement is that to Freeman is that Campo did it. Yeah. The statement is that Campo did it. I'm sure you're going to get there, but my question is, is there sufficient evidence then to convict your client on accountability? There are a few responses on accountability. First of all, the state made a strategic call during trial to do an all-or-nothing strategy. In fact, in their brief, I think page 15 of the brief, says that their only evidence at trial would have supported the theory that Campo was the shooter. They disavow that. Once the state takes that all-or-nothing strategy, there's a body of case law that accountability can't be injected late in deliberations. It can't be injected the first time on appeal. We saw this in the Robinson case. It can't be injected into the case for the first time on a post-conviction appeal. My second response is that we don't know what the state would have done. That's a fact question. Their claim is, had this evidence come in, we would have abandoned our strategy that we started with, where we're going that the idea that it's an all-or-nothing and Morris is the shooter. We would have abandoned that, changed gears, and gone toward an accountability. That's a fact question that I think we need to resolve at a hearing. You have to find, we would have to find prejudice with the ineffective assistance. And to determine prejudice, you'd have to show, but for counselors, unprofessional errors, the results of the proceedings would have been different. So I think the question of accountability goes to that prejudice prong. If we find, even if we find that he was ineffective for cross-examining or not bringing this information out about this other confession, the prejudice prong would not be met because you do have the accountability. Here's, and this is the third point. I was going to raise on accountability, Your Honor. A conviction by accountability in this case is a different result. Why? It's a different result because the way that accountability ends up figuring into sentencing. If he's convicted by accountability not being the shooter, that means that the burglary and felony murder can't both stand. It also means that he's going into sentencing with a better mitigation package than if he's the actual shooter. It would change the sentencing. It would change. And, of course, we're only in a pleading stage here, so we're taking it true. So, you know, what the likely, what is, is there a likelihood of a different result? And prejudice can even be one day of a sentence. If there's a likelihood that my client had a one-day less sentence in this case, if the state had abandoned that theory and instead gone for accountability, then that is enough to make a showing of prejudice. But had it come up, couldn't the state have offered an accountability instruction? They, you know, they seem to disavow that. They seem to disavow that on page 15 of their brief, but it's a different trial. It's, if they're, it would certainly undermine the state's credibility. If they'd wheeled around mid-trial, if it had come out that Camper was, you know, Camper was really the shooter, now they're going into closing, having this theory of the trial changed midway, where their star witness has been exposed as being credible and biased because he's the actual shooter, where their other witness, who's going along with him, where they, you know, has the same credibility problems falling on him. And, you know, one thing in the history of this appeal is the state's theories of the shooter has been changing and changing and changing. In this case, because they want the maximum sentence, they say my client is the shooter. When Biden and Howard eventually goes to trial, they decide, oh, they're closing arguments in my client's petition. They say, oh, Howard might have actually been the shooter. Maybe it's not Camper. Maybe, sorry, maybe it's not Morris. And then we find out that Camper was the one who was bragging in prison that he was the shooter, so he could find a way to get a better result for himself. And a jury, hearing about what Camper was doing, is not going to believe what the prosecutor is telling them in the closing and is certainly not going to believe Camper and his friend Fox's testimony. And without that, the state has a weak circumstantial case that maybe links my clients to these guns and maybe links my clients to the planning. It's certainly not one where the state can go off at the closing and say that it is my client that pulled the trigger, and a jury would believe that beyond a reasonable doubt. Now, I see my time is short. I'd like to briefly talk about the second issue in this, which is post-conviction counsel's failure to provide any evidentiary support to make a necessary amendment to the petition for the claims which were advanced to second stage proceeding regarding DNA and fingerprint expert testimony. Your Honors, the key thing here is what do we do with this presumption that counsel must have scoured the earth and not been able to find anything, and we know it's easily rebutted. Now, I may be stepping a little bit past the briefs here, but if we look at this record, there's just no indications that counsel did this kind of investigation for an expert. Looking for an expert is not like looking for some alibi witness out there. There would be marks on the record. You'd see a motion from counsel asking for funds for an expert. You'd see continuances indicating that an expert has been contacted. We don't see that. This court can even look at counsel's billing. There's a billing dispute by counsel at the end of the common law record. Counsel is billing every 15-minute communication with my client. There is nothing in there where counsel has indicated he's conducted any investigation, let alone contacted an expert. And this area of 651C law, and I know it's been shifting, but I think this court's decision of people being wise about 14 months ago is a good guide to what we do with these failure to include support claims. Because counsel didn't include that support, because he didn't take the next step in finding the explanation of why he wasn't that, didn't include that support, I mean, and especially this. Did you have an affidavit from an expert as to what this DNA or what this fingerprint expert would testify to? No, but that is exactly why post-condemnation counsel failed. It is because we didn't get that affidavit or the other evidence, didn't provide any explanation of why he didn't have that affidavit or other evidence that we need to go back to the second stage in order to ensure that that and the other claims get properly developed. I think the Twardowski case in the Fifth District is pretty close, because also it's not just the failure to support. What counsel does do is he just sort of speculates what a DNA expert might testify to. The DNA in this case is strange. It includes 74 percent of the population. It is a full loci. Usually I think the standard amount is 10. It is a full loci, low copy number match. It is odd DNA that just about any expert would have serious questions about. We said the Pike case, I even found this kind of DNA evidence irrelevant. Now, I note that the oddity here is trial counsel did seem to think about having an expert early. He contacts a specific expert, Carl Wright from, I think, Illinois Forensics. That's referenced very early in the report of proceedings, but then it goes away. The trial court properly advances this to second stage. And if I might finish my thought, Your Honor? Yes. Advances to second stage. It's not threadless, and the counsel doesn't take the necessary amendment. Therefore, we ask that you reverse the doomsmiths of my client's post-conviction petition, advance the claims to third stage proceedings, and order new second stage proceedings as requested in the briefs. Thank you, Your Honors. Any other questions? I do. Pardon? I do. But how do we get around this Supreme Court case, People v. Williams? And I know there's, I think, three being discussed in this case. But the one that says that post-conviction counsel had no obligation to seek out a blood type expert or a chain-of-custody expert, that that's not reasonable assistance.   Yeah, 1999. Thank you. Yeah, I think it's factually and legally distinguishable. Factually is we are doing, factually, the defendant there was clearly, you know, there was some blood evidence that no expert testimony had come in. We're not, here we're saying the science should come in to rebut the State's expert to say this DNA is suspect. There, it was the defendant's sort of flight of fancy that maybe if we went and got this blood tested, it would be helpful to my defense. Legally, we do have some indication of a named expert in this record. There is contact early on with, I suppose that's factually, with Carl Reich and Illinois investigations. We don't know what he said because post-conviction counsel did do the work to do it. I also suggest that a key legal distinction is that this claim got advanced to second-stage proceedings. That meant that counsel had to either amend it in a way that could satisfy Illinois law or he had to withdraw the claim and provide that explanation under group career as to why he determined the claim was frivolous. Instead, he sort of did nothing. So this falls in the ambit of the more recent law, like that Wise and that Ursula decision that says, counsel, you have to at least do something to this claim, amend it, withdraw it, give us an explanation why you're not attaching the evidence. You can't just do nothing on this kind of claim anymore. Thank you. You have an opportunity to make rebuttal. Thank you, Your Honor. Mr. Kelleher, you may proceed. What is your response to Justice Mullin's question of Mr. I can't think of his name right. Yes, Easton, I think is his name. Good morning, Your Honors. May it please the Court. My response to his question regarding. No, your response to his answer to her question just now. Oh, my response is that the Illinois Supreme Court has discussed this situation in a number of cases. And in Peter V. Johnson, Illinois Supreme Court rejected the claim that PC counsel had an obligation to locate witnesses that were not specifically identified by the defendant. And that's exactly the situation we have in this case. We have a situation where the defendant made this claim, and it was in the pro se petition that counsel should have sought out and called experts to counter the testimony of Blake Apper, which was the DNA expert who testified, and Edward Rotman, which was the fingerprint expert who testified in this case. But nothing in the record indicates that a favorable DNA or fingerprint expert existed, and there's no evidence that defendant informed post-conviction counsel of the specific identity of an expert who could have offered favorable testimony. So this claim is all based on speculation. And the Illinois Supreme Court says that, you know, while PC counsel has an obligation to present defendants' claims in appropriate legal form, PC counsel is under no obligation to actively search for sources outside the record that might support generalized claims raised in a post-conviction petition. It's the defendant. Counsel mentioned that there was some indication that he had spoken, that trial counsel had spoken to an expert, but produced nothing from that expert, correct? I mean, he said that. If you don't produce something, perhaps because it's not favorable, right? Yes, exactly. And just, if you look at Blake Epper's testimony here, he, I mean, some of the, some of his conclusions supported the state's case, but, you know, some of his conclusions supported the defense, because this isn't a case where he made a match and said that the DNA mixture, you know, the defendant was a source who contributed to that mixture. He never reached that conclusion. In fact, he said just the opposite. He said that although a defendant could not be excluded from having contributed to the mixture, he went on to explain that, you know, this is a fairly common DNA profile, and approximately 74% of the population could not be excluded. So. Should, at that point, PC counsel have withdrawn the claim? Is that, is it evidence of unreasonable assistance that he left it sit there? Well, Your Honor, the Supreme Court of Illinois recently addressed a case in Williams, this was last year, and it talked about situations where PC counsel really didn't have good options, but chose to pursue the best available option, and I submit this is one of those cases. For numerous reasons, this was a difficult case for post-conviction counsel, because as this court found on direct appeal, there's a mountain of evidence that defendant was a participant in this case. You know, whether or not he was a shooter, that's another issue, but in any event, he was a participant. And in Williams, the Illinois Supreme Court stated that, where the record shows that under the circumstances, the arguments of PC counsel raised were the best available options, counsel cannot be said to have rendered an unreasonable level of assistance, even if the arguments lacked legal merit, were not particularly compelling, and were ultimately unsuccessful. Now, granted, these arguments were not compelling at all, and I submit they had little or no legal merit, because as Justice Shostak pointed out, there was no affidavit here from any potential expert witness who could have testified in a favorable manner that might have changed the outcome of this case. So the Illinois Supreme Court recognized that, you know, sometimes PC counsels are in a difficult situation where they really have few good options, so they basically take the best option available. And in this case, defendant raised his claim in the PC petition, so essentially post-conviction counsel stood on that claim. And this is distinct from the situation, the case of Twardowski, that counsel mentioned in his argument. And the significant distinction is, in Twardowski, PC counsel raised an additional claim in the amended petition that was not raised in the pro se petition, and that was about obtaining, the claim was that trial counsel had failed to obtain an expert regarding the fire that was involved in that case. But PC counsel didn't submit any documentation with that claim that he had included in the amended petition. So that's a different situation. That's a PC counsel raising a new claim in an amended petition. Here we have a situation where PC counsel basically was in a bind because defendant had raised these claims in his pro se petition, and yet there was really no other information provided by defendant about an expert who could possibly provide favorable testimony. And again, in Johnson, the Illinois Supreme Court says that PC counsel has no obligation to engage in a generalized phishing expedition in search of support for claims raised in a petition. And, yes, there are plenty of experts who can testify about DNA and fingerprint evidence, but that doesn't mean they could testify favorably in this case. And I just want to point out, Blake Esper, he worked at the Illinois Crime Lab for 18 years. He was qualified as an expert in DNA for more than 75 cases where he testified as an expert. And he talked about in detail about how, you know, the methods he used. He talked about, you know, the strict requirements as far as quality control, how they have to, you know, they go through all types of steps to make sure the sample isn't contaminated. There's rigorous other quality control standards where their work is double-checked. And he explained that, you know, this is what we found from this sample. He was able to exclude Fox, Howard, and Kampos as being contributing to that sample. That was a definitive finding, but he candidly said, you know, although defendant could not be excluded, he never said, I'm finding that defendant contributed to this sample. If that was the case, sure, then defendant probably could have gone out and found an expert because that would have been an incorrect finding, but that's not what Blake Esper did. And then as far as the fingerprint expert, Edward Rotman, he was at the crime lab, he's been at the crime lab for 29 years. He qualified as an expert 100 times, over 100 times. And his conclusion was that, you know, the latent fingerprint that he found on the recovered pistol, the Springfield pistol, matched defendant's left index finger. And he explained how he went about making those comparisons with prints that defendant had supplied. So there's really no evidence in the record that an expert could have provided favorable evidence. Let me ask you this question. Counsel raised, in their briefs they raised that there was a Brady violation. Now, I know counsel said whether there was a Brady violation or not, you know, counsel was still ineffective. But in your brief, you do indicate that there were copies, and you get the Bates stamp pages of the copies where you raised Detective Brock's notes and the fact that you may call Thomas Freeman as a witness. Were those turned over, and I would assume it is your position that those were turned over in discovery in this case? Yes, Your Honor. In the people's 18th supplemental answer to discovery, which can be found in our record at page 236, the state specifically, you know, point two, it says, We have attached our copies of supplemental reports and handwritten investigative notes by Detective Brock, consisting of stamped pages SAO 274, I'm sorry, 2742 through 2756. And the two pages at issue here are the first page is stamped SAO 2744, second page is stamped SAO 2745. So the record positively rebuts that this evidence wasn't turned over. So that's the case. So that could have been raised in any post-trial motions, could have been raised in the initial appeal? Yes. And so, yes, it's forfeited. And also, it's just totally meritless because there's no- On the other hand, if counsel did have it and didn't do anything with it, would that equate to ineffectiveness? Post-conviction counsel? Both, trial counsel and post-conviction counsel. As far as Detective Brock's, well, this goes back to the- Well, I mean, counsel- This goes back to the first argument. Right. Which, well, first of all, the contents of that notes were Capo's allegedly told Charles Freeman that- He was a shooter. He was a shooter. And then it was in Detective Brock's notes. Well, first of all, Capo's alleged statement to Freeman is hearsay. Did Capo testify at the trial? Yes, he did. So couldn't he have been impeached with that? Well, trial counsel could have asked Capo's- Yeah, something along the lines of, you're saying my client shot him, shot the victim. Didn't you tell Freeman in the jail that you shot him? That would have been wrong. That's evidentiary. Excuse me, evidentiary error there? You just can't even ask that? No, he could have asked that. The problem would have been- I mean, that's how impeachment is done, isn't it? Well, the problem would have been- Proving it up? Yes. Then you had Freeman coming anyway. Then you- Freeman didn't. Capo tell you on such and such a day and time that he shot him. Yes, he did. No, he didn't, whatever. It would still be- Hearsay, how is impeachment ever accomplished then? Well, oftentimes there's- Sometimes people don't complete it, but sometimes they do complete it, and you certainly can try to complete it, and how is it ever done if, according to you, it's hearsay? Well, it's often completed with a statement that was made under oath or a written document that was- Not always, though, and certainly the rule doesn't require that, does it? Because you tell this court that the impeachment can't be completed because it's hearsay, and to be honest with you, that's not my understanding of the law. But this would go to- Well, there's certainly some other questions with regard to it, but you said in your brief this was hearsay, and you're basically implying it couldn't even have been asked, and I just wonder, again, how is impeachment ever accomplished? I wasn't saying it couldn't be asked. I was just saying- But you didn't quite say that. No, it would be a reason why counsel would choose not to ask it, a strategic reason. Because it might complete the impeachment? The other reason, because he would have difficulty completing the impeachment. It wasn't- Because he had the witness coming. He was on the stand. You two make a different statement, and then the person who allegedly heard the allegedly different statement, somebody under subpoena, and he did testify. When defense tried to call Charles Freeman and- Well, that was on another issue. That's not what's before us. Counsel's raising that this was ineffective. Yes. And that's the question we're looking at. Even if there was a way, counsel, as- I'm sorry. We still would have to deal with the prejudice part of it strictly. No question about it. But when the state's attorney tells me, essentially, impeachment can't be completed, I'm interested and I want to understand that logic. But I think I've done as far as I can. Thank you, counsel. Your time is up. Are there any other questions?  I don't have any questions. Yeah, Mayor. Pardon me. Margaret, do you have any other questions? No. Thank you, Justice. Thank you, counsel. Thank you. Mr. Euston. Just a few points, Your Honor. Your Honors, and yes, I would suggest that if counsel has understood how curious they were, in the way that the state's attorney in this case seems to have done, that would be deficient performance. That's the argument out of briefs, that counsel makes this strange idea that somehow Charles Campo is a party opponent, and that is what is getting in the way of getting anything out of Charles Freeman. Even if he was wholly aware of this statement, he lost his chance to do that when he didn't challenge Campo on the stand and when he did try to bring it out properly when Freeman was testifying. Now, Justice Shostak asked about what is actually in the record on appeal. I want to make this clear, and it shows up in our reply brief. Matters that are only disclosed in discovery generally don't make it into the record on appeal in criminal cases unless they come in somehow as an evidence of trial or as an attachment to a proffer or a motion. My understanding is that the handwritten notes and any report based on those handwritten notes never made it into anything that would be part of the record on appeal. People in my job don't usually see the trial file. We don't usually see everything that came across in discovery. It is a misstatement of the law in the state's brief to claim that something was disclosed in discovery. It shows up in the record on appeal. The reply brief in our case details all the reasons why not. And I think you said in your brief that, you know, that's what a hearing would be for, we would find out, wasn't it? But, you know, there is that rule of law that says we're supposed to test these allegations against or just assume they're true and all that, but also look at whether they're supported by the record. And I'm concerned that given that both these reports, Osplund's and Brock's, which in my eye take pretty much the same thing, they're both bait. They're all bait stamped. And, again, it's maybe not conclusive, but there is that cover sheet. Was it their 18th? There's a cover sheet that says, oh, here's some notes. I think it says Brock. And this might contain Brady. So, again, you know, I understand it's a dismissal. Well, if this court were to take the position that the record rebuts that Brady claim on the question of were these disclosed, we'd accept it because it feeds into that ineffectiveness claim. The reason that Brady claim is there is because I don't want in some later proceeding for counsel to get on the stand and say I never saw this. It was never disclosed. And I don't want the state in some later proceeding to say these never made it to counsel, therefore he couldn't have performed unreasonably. When you received counsel's brief and it said in the brief these were bait stamped, and I'm not telling you how to do your job, but in the future could you not call defense counsel at the trial court level and say, hey, can you give me the discovery, or can you tell me if this was in the discovery? You know, we're in the posture of where with trial counsel, we have a major claim of trial counsel's ineffectiveness for this mistake with Charles Freeman's account. I would say that. And I would take your counsel's advice to reach out more clearly in the future, but I note that my client had to file a series of motions with the court to eventually get most of the trial file from his trial counsel. It has not been a wholly cooperative relationship with my client and counsel through this. So I couldn't tell you. And given the posture, the alternative is what's proper here, because we never quite know how the facts are going to spin out in one of these third stage evidentiary hearings. Now, the important thing here is I do briefly want to talk about prejudice. This is the state's key witness. Your position is whether or not this discovery was turned over or whether or not they had it, you're still alleging ineffectiveness. Yes. Yes, we are. We are alleging ineffectiveness. Now, that ineffectiveness is the core claim here, because counsel should have realized this fact was there and he should have brought it out. Now, I do want to make one final key point on prejudice, is if the jury had heard that Campo was bragging that he was the shooter while he was still trying to cut a deal, the jury would not have believed Campo. They would not have believed Fox. They would not have believed the prosecution who told them to trust Campo and Fox. If that happens, the jury is going to acquit. Given that we only have to make a pleading showing now, just a substantial showing to get to a hearing, I'd ask that this Court reverse the dismissal of my client's petition. Thank you, Your Honors. Any other questions? No, sir. None. Thank you. We'll take a short recess. Case can be reviewed. All rise.